IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DEE ANNE REYNOLDS,                      )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )       No. _____
                                        )       Judge _____
KNOX COUNTY GOVERNMENT,                 )       JURY DEMAND
CITY OF KNOXVILLE, and                  )
KNOXVILLE/KNOX COUNTY                   )
METROPOLITAN PLANNING COMMISSION,       )
                                        )
    Defendants.                         )

## COMPLAINT

COMES now the Plaintiff, and for cause of action would show unto this Honorable Court as follows:

1. Plaintiff, Dee Anne Reynolds, is a citizen and resident of LaFollette, Campbell County, Tennessee.

2. Defendant, Knoxville/Knox County Metropolitan Planning Commission is an agency of Knox County, Tennessee and the City of Knoxville, and may be served with process by delivering a copy of the Summons and the Complaint to the MPC Executive Director, City County Building, 400 West Main Street, Suite 403, Knoxville, Tennessee 37902.

3. Defendant, Knox County, Tennessee is a political subdivision of the State of Tennessee and may be served with process by and through the County Mayor, Tim Burchett, City County Building, 400 West Main Street, Suite 615, Knoxville, Tennessee 37902, or the Knox

County Attorney, Richard B. Armstrong, Jr., County Law Director, City County Building, 400 West Main Street, Suite 612, Knoxville, Tennessee 37902.

4. Defendant, City of Knoxville, Tennessee is a municipal corporation organized and existing under the laws of the State of Tennessee as a city of the State of Tennessee and may be served with process by and through the City Mayor, Madeline Rogers, City County Building, 400 West Main Street, Suite 691, Knoxville, Tennessee 37902, or Attorney for the City of Knoxville, Tennessee, Charles Swanson, City County Building, 400 West Main Street, Suite 699, Knoxville, Tennessee 37902.

5. Jurisdiction is founded upon Federal Question, 28 U.S.C. § 1331, 29 U.S.C. § 206, 42 U.S.C. § 2000e-5(F), and the doctrine of Supplemental Jurisdiction, 28 U.S.C. §§ 1367. Venue is proper under the code provisions cited herein, and 28 U.S.C. § 1391(b) and (c).

6. At all times stated herein, Defendants were, and currently are, employers subject to the provisions of the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

7. Each named Defendant is an employer subject to the provisions of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*

8. Each named Defendant is an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*

9. Each named Defendant is an employer engaging in an industry affecting commerce, and employs more than 20 regular employees.

10. The Defendants, Knoxville and Knox County, began operating the Knoxville/Knox County, Metropolitan Planning Commission in 1956, but did not have a formal agreement until October 3, 2014. On and after 1956, the Defendants, Knoxville and Knox County, jointly funded

the Knoxville/Knox County Metropolitan Planning Commission, and in addition, used federal money to fund it.

11. From 1956 through October 3, 2014, the Defendants, Knoxville and Knox County, did not formalize the plan or otherwise formalize any other agreement concerning the organization, governance and funding of the Knoxville/Knox County Metropolitan Planning Commission until they entered into an inter-local agreement on October 3, 2014.

12. The Defendants are joint employers of the Plaintiff.

13. Plaintiff was first hired to work by the Defendants in 2002 as the Finance Manager.

14. After Plaintiff was hired by the Defendants, she attended an orientation meeting for Knox County employees.

15. During her employment with the Defendants, Plaintiff was paid through the Knox County payroll system.

16. During her employment with the Defendants, Plaintiff received benefits as provided to Knox County employees. *See* attached Knox County Government Health Enrollment form, and Knox County Retirement Pension Board letter. (Exh. 1).

17. When Plaintiff was hired by Defendants, she was assigned Employer Number 7219, which was a Knox County Employee Number.

18. During her employment with Defendants, Defendants used in connection with Plaintiff's employment, official Knox County Government forms that are used for Knox County employees, including the attached payroll authorization/change form, and attached employment change form. (*See*, Exh. 2).

19. On Exhibit 2, MPC is shown as "Department" of Knox County, Government.

3

20. Throughout her employment, Plaintiff performed all her duties in a competent and satisfactory manner until her termination on June 24, 2014.

21. At all times stated herein, Plaintiff was fully qualified for the position of Finance Manager.

22. During her employment with the Defendants, Plaintiff received positive evaluations.

23. During 2005, Plaintiff began being supervised by Mark Donaldson, Executive Director of the Knoxville/Knox County Metropolitan Planning Commission.

24. At all times material hereto, Mark Donaldson was an agent and employee of the Defendants.

25. At all times material hereto, Mark Donaldson had the authority to discipline and terminate the Plaintiff.

26. Plaintiff alleges that during May of 2013, Elizabeth Albertson, a female employee of Defendants lodged complaints of sex discrimination and violations of the Equal Pay Act.

27. Plaintiff alleges that as a result of her being the only female on the managerial team at MPC, Ms. Albertson requested Plaintiff's assistance with her sex discrimination and Equal Pay Act complaint, and thereafter, Plaintiff recommended that Albertson follow the most recent version of the MPC Employee Handbook (August 1, 2007). (An excerpt from the August 1, 2007 MPC Employee Handbook is attached hereto as Exhibit 3).

28. The MPC Employee Handbook specifically states, in part:

> *Equal Employment Policy*
>
> The Metropolitan Planning Commission maintains an equal employment opportunity policy and does not discriminate in hiring practices or terms and conditions of employment.

All applicants and employees receive equal employment opportunities and all personnel decisions, actions, and conditions affecting employees, including, but not limited to assignment, transfer, promotion, and compensation, will be governed by the principles of equal opportunity.

Discrimination against any person in recruitment, examination, appointment, training, promotion, retention, or discipline because of political or religious opinions or affiliations or because of race, religion, national origin, sex, age (as defined by Federal law), disability, or veteran status shall be prohibited.

<u>The Knox County Human Resources Director has been designated as the Equal Employment Opportunity (EEO) Officer for Knox County, as well as MPC. The EEO Officer has overall responsibility for the implementation and monitoring of the County's Equal Employment Policy, as well as authority over the internal procedures employees use to settle EEO and harassment claims.</u>

*Equal Employment Opportunity Grievance Procedures*

It is the policy of the Metropolitan Planning Commission to establish a procedure for employees to follow in order to bring grievances of discrimination or harassment to the attention of management.

Procedure:

1. <u>If there is a question or complaint regarding employment practices that you are unable to resolve with your immediate Division Manager, you are encouraged to make the question or complaint known to the Equal Employment Opportunity (EEO) Officer (who is the Knox County Human Resources Director).</u> You will be asked to state in writing the nature and detail of the complaint. Any employee filing a complaint will not be subject to retaliation.

2. A copy of the complaint shall be submitted first to the MPC Executive Director prior to its submission to the EEO Officer. The Executive Director shall have the opportunity to address the complaint within ten days

5

of its receipt. If the complaint cannot be addressed to the satisfaction of the complainant, the complaint may then be submitted to the EEO Officer, consistent with this procedure.

3. The EEO Officer will investigate the complaint with the Executive Director, Division Manager, and any other person with knowledge of the situation.

4. You will be advised in writing of the results of the investigation and Knox County's decision regarding the complaint.

5. A record of the complaint and findings will become a part of the complaint investigation record, and the file will be maintained separately from your personnel file.

6. If you do not agree with the decision of the EEO Officer, you have the right of appeal with the Knox County Personnel Board. For instructions on the appeal process, see the Appeals section in this handbook.

(*See* Exhibit 3).

29. This MPC Employee Handbook, part of which is quoted above, had been distributed to employees since 2007, and the Defendants required employees to sign an acknowledgement form. A copy of Plaintiff's acknowledgement form for Exhibit 3 is attached hereto as Exhibit 4.

30. On June 7, 2013, Plaintiff and Elizabeth Albertson met with Richard Julian and Pat Carson in Knox County Human Resources concerning Albertson's complaint of sex discrimination and Equal Pay Act violations.

31. During the June 7, 2013 meeting, both Julian and Carson of Knox County Human Resources, agreed the facts as described by Elizabeth Albertson, supported claims of sex discrimination and Equal Pay Act violations.

32. During this June 7, 2013 meeting, Julian and Carson of Knox County Human Resources, agreed that pursuant to the MPC Employee Handbook, an excerpt of which is attached hereto as Exhibit 3, Elizabeth Albertson should submit a formal complaint to the MPC Executive Director, Mark Donaldson.

33. On July 25, 2013, Elizabeth Albertson provided a formal complaint of sex discrimination and Equal Pay Act violations to Executive Director, Mark Donaldson, and provided a copy to Plaintiff. A true and exact copy of the complaint is attached hereto as Exhibit 5.

34. Thereafter, on July 25, 2013, Plaintiff and Albertson met with Mark Donaldson to discuss the sex discrimination and Equal Pay Act complaint. During this meeting, Donaldson's reaction was dismissive. Incredibly, Donaldson's suggestion was to discuss the situation "over a beer" or "on the golf course."

35. The Plaintiff was concerned that Donaldson's attitude toward the complaint would essentially provoke the female employee to file a Charge of Discrimination with the Equal Employment Opportunity Commission, and she raised concerns to Donaldson about the handling of the complaint.

36. On or about August 22, 2013, a meeting was held to discuss Ms. Alberton's complaint. In attendance were Ms. Albertson, Mark Donaldson, and Mark Carberry, Ms. Albertson's supervisor, who was involved in the discrimination. Ms. Albertson requested having a third party with EEO training or at least another female present at this meeting, but her request was denied. This meeting lasted about two and one half hours, and Albertson indicated to Plaintiff it was very intimidating, and that Mark Donaldson got angry she had gone to Knox County Human Resources.

7

37. On or about August 27, 2013, the Plaintiff met with Knox County Human Resources Director, Mark Jones, and discussed Albertson's complaint and advised Ms. Albertson was considering asking Knox County Human Resources to investigate, and Plaintiff was trying to get Ms. Albertson to hold off filing with the EEOC. Mr. Jones stated that a legal opinion was needed to determine if Knox County Human Resources could investigate the complaint.

38. On or about August 31, 2013, due to Donaldson's failure to address the complaint, and due to her concern that Ms. Albertson would escalate the complaint by filing with the EEOC, Plaintiff made Rebecca Longmire, the Chair of the Knoxville/Knox County Metropolitan Planning Commission, aware of Ms. Albertson's sex discrimination and Equal Pay Act complaint.

39. It became clear to Plaintiff that Donaldson did not intend to treat Albertson's complaint seriously.

40. On or about September 12, 2013, as a result of continued inaction of the Defendants' agents and employees regarding Ms. Albertson's complaint, Plaintiff again discussed the complaint with Mr. Donaldson and raised concerns over how the complaint was being handled, that it appeared that the complaint had merit, and further, that Ms. Albertson feared being retaliated against for lodging the complaint.

41. On or about September 24, 2013, Plaintiff delivered to Knox County Human Resources Director, Mark Jones, a memo regarding the sex discrimination and Equal Pay Act complaint, advising him, in part, that the complainant was not satisfied with the meeting she had with Mark Donaldson, Executive Director. A copy of which is attached as Exhibit 6.

42. On September 26, 2013, The Knox County Law Director, Richard B. Armstrong, Jr., sent the Plaintiff a memo that stated as follows:

> The Knox County Law Director's Office has been asked if the Knox County Human Resources Director should investigate the EEO gender discrimination and equal pay complaint filed by one of MPC's employees. Our review of the MPC Employment Manual, as approved by MPC in 2004, provides specific procedures to be followed regarding employee grievances. The MPC is required to follow these procedures. The specific procedures and timelines for dealing with employee grievances and complaints are outlined and defined on pages 5-15 through 5-16. We agree with the advice of your very able counsel, as set out in your email of September 23, 2013, to Edith Willcox in this office. Knox County has no authority or power to participate in MPC's actions. (Attached as Exh. 7).

43. Plaintiff became very concerned when she learned that the MPC Employee Handbook for 2007 that she and Ms. Albertson had attempted to follow with respect to Ms. Albertson's sex discrimination and Equal Pay Act complaint, apparently no longer applied, and Plaintiff became concerned there was no apparent EEO policy for MPC employees to follow.

44. On or about October 7, 2013, Rebecca Longmire, Chair of the MPC, invited Plaintiff to an MPC Executive Committee meeting that was occurring on October 8, 2013, advising Plaintiff that her concerns regarding Ms. Albertson's sex discrimination complaint, and the lack of EEO policies for MPC employees to follow would be addressed. However, an hour before the meeting, Ms. Longmire contacted Plaintiff and discouraged Plaintiff from attending the meeting. Ms. Longmire told Plaintiff that it would not be in Plaintiff's best interest to come to the meeting, but Ms. Longmire ultimately relented, and Plaintiff attended the meeting in order to address Ms. Albertson's complaint, and she also voiced her concern that given the Knox County Law Director's opinion that there was no functioning EEO policy for MPC employees, and as a result, Federal funding could be jeopardized.

45. During the October 8, 2013, Executive Committee meeting, Donaldson and others misrepresented the facts by characterizing Albertson's complaint of sex discrimination and Equal

9

Pay Act violations as only a "disagreement" or "grievance." Clearly, this characterization contradicted Albertson's written complaint to Mr. Donaldson. (*See* Exh. 5). Steve Wise, MPC attorney, also stated that Ms. Albertson should not have gone to Knox County Human Resources regarding the complaint. The Plaintiff stated, when Ms. Alberston took her complaint to Knox County Human Resources, she was following the directives set out in the MPC Employee Handbook she had been provided. (Excerpts which are attached as Exh. 3). At that point, Donaldson and Steve Wise became visibly angry, and Plaintiff was instructed to leave the meeting.

46. Following the Executive Committee meeting, on October 9, 2013 Plaintiff sent a memorandum to Mark Donaldson, Executive Director, the MPC Executive Committee, and the MPC Attorney, Steve Wise, reiterating her concerns about the lack of clear procedures for filing complaints of sex discrimination, and the potential implications this could have on Federal funding. (Copy attached as Exh. 8).

47. The Plaintiff later learned that on October 10 and 11, 2013, Steve Wise and Mark Donaldson consulted with an outside attorney in order to terminate the Plaintiff, but by October 17, 2013, were discussing issuing Plaintiff a "memorandum." Thereafter, on October 17, 2013, Plaintiff received a trumped up written disciplinary warning from Mr. Donaldson, and thereafter, he began treating her in a hostile manner, and advised her, in part, she was not the Human Resources Manager for MPC, and restrictions were placed on her as to who she could speak with which included even elected officials. Plaintiff alleges Donaldson's actions were in retaliation for her participation in the protected activities set forth herein, and were an effort to document her file, and were otherwise an attempt to force her to resign. (A copy of this write-up is attached as Exh. 9).

48. In January of 2014, Plaintiff contacted Steven Wise, MPC attorney, and complained that Mr. Donaldson was retaliating against Plaintiff for assisting the female employee with her sex discrimination and Equal Pay Act complaint and advised Mr. Wise that the female employee had been in contact with the Equal Employment Opportunity Commission on several occasions.

49. In late January 2014, Plaintiff complained to Donaldson about the trumped up retaliatory written warning, and again discussed Ms. Albertson's sex discrimination and Equal Pay Act complaint with Donaldson and advised him that Ms. Albertson had contacted the EEOC. Donaldson denied it was a "real" discrimination claim, and he became visibly agitated. Thereafter, Donaldson's abusive conduct of the Plaintiff persisted and intensified.

50. On April 29, 2014, Mr. Donaldson sent Plaintiff a memo with respect to an unpaid invoice from an outside attorney, regarding "Dee Anne Reynolds," for services dated October 10, 11, 16 and 17, 2013 – and which referenced conversations with Steve Wise and Mark Donaldson, "termination issue" and the written warning. This was a blatant attempt to intimidate the Plaintiff, and part of Defendants' continuing retaliation against the Plaintiff for engaging in protected activities. Additionally, these were additional efforts to encourage Plaintiff to resign.

51. Plaintiff questioned Donaldson about her name being on the attorney's bill, and Mr. Donaldson confirmed that he had originally planned to terminate Plaintiff's employment when he spoke to the outside attorney.

52. On May 1, 2014, Plaintiff protested the continuing retaliation in an email to Mark Donaldson.

53. As a result of Donaldson's continuing retaliation, Plaintiff also lodged a complaint to MPC Chair, Rebecca Longmire, on May 8, 2014 stating that she was being retaliated against by

11

Donaldson because she had assisted Ms. Albertson with her complaint of sex discrimination and Equal Pay Act violations, and she discussed Mr. Donaldson's plans to terminate her and the attorney's bill.

54. An employee's good-faith complaint of retaliation is also a protected activity under Title VII, the Equal Pay Act, and the Tennessee Human Rights Act.

55. On or about June 24, 2014, Plaintiff was summoned by Mark Donaldson to the MPC conference room, and he informed Plaintiff she was being terminated for "insubordination."

56. The reason given by Defendants is pretextual, and the true reason for Plaintiff's termination was due to her protected activities as set forth herein.

57. Following her termination, the Plaintiff filed a timely Charge of retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about February 15, 2015. (A copy of said Charge is attached hereto and incorporated herein as Exhibit 10).

58. The EEOC Charge was timely filed.

59. As of the filing of this Complaint, Plaintiff has yet to receive a Notice of Right to Sue letter from the EEOC. Upon receipt of said Notice, it is Plaintiff's intention to amend Paragraph 62 of this Complaint to also allege claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1983(a).

60. This suit is timely filed.

61. The Plaintiff alleges that Defendants, through their agents and employees, fired her in retaliation for engaging in protected activities.

62. Plaintiff alleges that the conduct of Defendants' agents and employees constitutes retaliation for engaging in protected activities in violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*

63. Defendants are responsible and liable for the retaliatory actions of its agents and employees under the doctrine of respondent superior and under agency principles.

64. As a result of Defendants' conduct, the Plaintiff has lost tangible job benefits, including a loss of income and benefits, both past and future, including front pay, and has suffered and will continue to suffer irreparable injury, emotional distress, humiliation and embarrassment, and other pecuniary losses as a direct result of Defendants' illegal actions.

WHEREFORE, Plaintiff prays for the following relief:

1. Compensatory damages, including front pay, (or in the alternative reinstatement if the Court deems it appropriate).

2. Prejudgment interest.

3. Reasonable attorney's fees.

4. The costs of this action.

5. A jury to try this cause.

6. Appropriate injunctive relief.

RESPECTFULLY SUBMITTED this 23rd day of June, 2015.

BURKHALTER, RAYSON & ASSOCIATES, P.C.

_____
David A. Burkhalter, II, BPR #004771
Ronald A. Rayson, BPR #013393
D. Alexander Burkhalter, III, BPR #033642
Attorneys for Plaintiff
111 S. Central Street
P.O. Box 2777
Knoxville, Tennessee 37901-2777
(865) 524-4974